193 N.J. Super. 57 (1983)
472 A.2d 156
NORMANDY BEACH IMPROVEMENT ASSOCIATION, PETITIONER-APPELLANT,
v.
COMMISSIONER, DEPARTMENT OF ENVIRONMENTAL PROTECTION, STATE OF NEW JERSEY, AND OCEAN COUNTY UTILITIES AUTHORITY, RESPONDENTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 13, 1983.
Decided December 28, 1983.
*59 Before Judges ANTELL, JOELSON and McELROY.
Joseph Nolan, argued the cause for appellant (Nolan, O'Neill & Moore, attorneys; John J. Mulvihill and Corinne M. DeStefano on the brief).
John M. Van Dalen argued the cause for respondent Department of Environmental Protection (Irwin I. Kimmelman, Atty. Gen., of New Jersey, attorney).
*60 Richard H. Woods argued the cause for respondent Ocean County Utilities Authority (Hiering & Dupignac, attorneys).
The opinion of the court was delivered by JOELSON, J.A.D.
Normandy Beach Improvement Association (NBIA) is composed of property owners in an area known as Normandy Beach. This is NBIA's appeal from a final decision of the Department of Environmental Protection (DEP) issuing a permit under the Coastal Area Facility Review Act (CAFRA) for the Ocean County Utilities Authority (OCUA) to construct a sewerage pumping station in the Normandy Beach area. We affirm.
NBIA contends that it is entitled to a reversal because it was denied the type of evidentiary hearing required for a contested case. A contested case is defined in N.J.S.A. 52:14B-2(b) as:
... a proceeding, including any licensing proceeding, in which the legal rights, duties, obligations, privileges, benefits or other legal relations of specific parties are required by constitutional right or by statute to be determined by an agency by decisions, determinations, or orders, addressed to them or disposing of their interests, after opportunity for an agency hearing.
In Little Falls Tp. v. Bardin, 173 N.J. Super. 397 (App.Div. 1979), certif. den. 82 N.J. 286 (1980), we found that a township was not entitled to an adversarial hearing on an application which had been made for the registration of a solid waste disposal facility in the township. In so doing, we pointed out that cases on which the township relied, Juzek v. Hackensack Water Co., 48 N.J. 302 (1966) and In re Borough of Peapack-Gladstone, 11 N.J. Super. 498 (App.Div. 1951) "... both involved administrative action directly affecting substantial property rights of the parties." Little Falls Tp. v. Bardin, supra, 173 N.J. Super. at 407. In Public Interest Research Group v. State, 152 N.J. Super. 191 (App.Div. 1977), we held that environmental groups objecting to the issuance of a permit to construct a nuclear-power plant did not have particularized property rights sufficient to constitute them "specific parties" within the meaning of N.J.S.A. 52:14B-2(b), and that they were therefore properly *61 denied "a trial-type hearing." Id. at 205. Similarly in Cunningham v. Dept. of Civil Service, 69 N.J. 13, 22 (1975), the Court held that "[w]here the administrative agency is acting in a general capacity ... so that the direct effect of its factual conclusions will be imposed on a class or group, as distinguished from such specific person or persons, then it may well be that such a hearing [adjudicative] is not required."
In the brief submitted on its behalf, NBIA contends that it is "not a public interest group challenging policy questions of broad applicability," but should be regarded as a specific party or parties having legally cognizable property rights. As already mentioned, NBIA is an association of property owners in the Normandy Beach area. The transcript of the hearing of April 21, 1982 before the hearing officer designated by the Director of the Division of Coastal Resources of DEP indicates that various home owners in Normandy Beach stated that the quality of their lives would be adversely affected by the proposed pumping station, and that a real estate expert stated that the station would have a detrimental effect on the economic values of the homes in the area.
Plaintiff's contention of entitlement to an evidentiary hearing, if adopted, would have far-reaching consequences. It has become common for property owners within the vicinity of a proposed governmental facility to join together to express their concern and to offer strong objection, whether the proposed facility be a prison, mental institution, drug-treatment center, highway, or anything else. The joint or individual rights of property owners to be heard should be respected, but we have been offered no support for the proposition that whenever a proposed governmental project will affect property owners within an indeterminate radius of the project, each owner or group of owners must be entitled to a full evidentiary hearing. To the contrary, property owners in a municipality do not possess the right to an evidentiary hearing when the municipality *62 proposes to revamp its existing zoning ordinance in such a manner as may adversely affect property values.
Regardless of the label given the hearing of April 21, 1982, we are satisfied that NBIA received an adequate and fair hearing. This conclusion is the result of our examination of the record of that hearing. Despite the initial statement of the hearing officer that he was not dealing with a contested case, the lengthy hearing, which we are advised lasted six hours, took on many aspects of an adversarial hearing. This was largely due to the insistence and persistence of NBIA's counsel. Administrative agencies have flexibility to develop "hybrid proceedings" in order to implement legislative policy. Texter v. Human Services Dep't., 88 N.J. 376, 385 (1982). The thorough consideration given to the application here was such that the objectors cannot show prejudice.
The summary report of the hearing officer indicates the objectors were represented by counsel, and 13 objectors spoke in opposition, supplemented by 60 letters of opposition. The summary report also states that an environmental consultant and an engineer were "in attendance" on behalf of the objectors. These professionals did more than merely attend. Both made lengthy statements in opposition to the pumping station, and the engineer's testimony at a prior hearing was marked "in evidence." As already mentioned, a real estate expert produced by NBIA also was heard. Certainly, NBIA was not prejudiced by the lack of opportunity of the OCUA's attorney to cross-examine these experts. Additionally, NBIA was given the latitude that it might have been denied at a strict evidentiary hearing to introduce into evidence factual findings of a law-court judge in a suit alleging offensive odors under pumping-station conditions which may have no longer existed or were to be corrected. As for OCUA's expert, the counsel for NBIA was allowed to address several questions to him through the hearing officer. The matters concerning which further information was sought by DEP involve, in part, the subjects raised by these questions. *63 Additionally, the summary report of the hearing officer contains adequate findings of fact and conclusions of law. As for the contention in the brief submitted on behalf of NBIA that the hearing was "... contrary to principles of due process and fundamental fairness," NBIA was fully heard after due notice of a public hearing. That hearing was in full compliance with N.J.S.A. 13:19-9, a portion of CAFRA. It provides:
The Commissioner, or a member of the Department designated by him, shall hold a hearing to afford interested parties standing and the opportunity to present, orally or in writing, both their position concerning the application and any data they may have developed in reference to the environmental effects of the proposed facility.
Plaintiff further asserts that a reversal is required because subsequent to the approval of the project, the DEP Commissioner denied plaintiff's request for "... a plenary hearing before an Administrative Law Judge to make findings of fact, conclusions of law and recommendations to the Commissioner on the numerous issues involved in the instant application." Under N.J.A.C. 7:7D-2.8, any interested person aggrieved by the commissioner's decision can "... request a plenary (quasi-judicial) hearing before a hearing officer appointed by the commissioner to make findings of fact, conclusions of law and recommendations to the commissioner on whether to affirm, modify or reverse the decision in the case." Under that same regulation, "[t]he commissioner shall consider the request for appeal ... and may then appoint a hearing officer and schedule a hearing." Here the commissioner, through his Director of the Office of Regulatory Services, expressed satisfaction "... that the application received close and careful review, and that the appropriate statutory findings have been made under Sections 10 and 11 of CAFRA," and concluded that "[a]s there are no substantial issues raised by this appeal which would justify a fact-finding hearing, your request is hereby denied." In reading N.J.A.C. 7:7D-2.8, we find that it is mandatory that the commissioner "consider the request for appeal," but it is not mandatory that he act upon it by appointing a hearing officer and scheduling a hearing. The use of the words "shall" and "may" in sharp *64 juxtaposition leads us to this conclusion. The commissioner possessed discretion as to the appointment of a hearing officer and the scheduling of a hearing. The reasons given in his letter of denial do not indicate an abuse of his discretion. This is especially so since plaintiff already had the benefit of a hearing which to a great extent possessed many of the indicia of the "quasi-judicial" hearing referred to in N.J.A.C. 7:7D-2.8.
Plaintiff further asserts that the administrative procedures employed by DEP "... were so inherently unfair as to deny NBIA due process." In this respect, it refers to the fact that the hearing officer who conducted the hearing had stated in his preliminary analysis that "[i]t appears that the Director will be able to make the positive findings required under the CAFRA Statute...." Thus, plaintiff avers that because of prejudgment by the hearing officer, its rights to a fair hearing and due process were violated. As the hearing officer emphasized in his colloquy with NBIA's counsel, his preliminary analysis did not specifically recommend the granting of the permit. The analysis merely alerted the objectors to the things they would have to overcome in order to prevail. Furthermore, we have held that it is not improper for the same hearing officer to preside over a preliminary and second hearing if the later hearing is not in the nature of an appeal. State v. Owens-Corning Fiberglas Corp., 100 N.J. Super. 366, 389 (App.Div. 1968), aff'd 53 N.J. 248 (1969). By way of analogy, we mention that trial judges regularly hear on remand matters in which they have been reversed by an appellate tribunal. Similarly a hearing officer may hear a matter on remand after reversal. NLRB v. Donnelly Garment Co., 330 U.S. 219, 67 S.Ct. 756, 91 L.Ed. 854 (1947). It has even been held that an administrative official may participate in an investigative and adjudicative function in the same matter. Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975).
Finally, NBIA urges that the issuance of the CAFRA permit was arbitrary and capricious. Our function is to determine *65 whether there is sufficient evidence in the record to justify the determination which was reached. Public Interest Research Group v. State, supra, 152 N.J. Super. at 203. "Such a limited scope of review is particularly significant in this area of highly technical and scientific knowledge, wherein a court must accord a high degree of deference to the administrative agency and its expertise." Ibid. There was ample credible evidence in the record to support the agency's determination.
Affirmed.