**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5001-15T3

IN THE MATTER OF REQUEST FOR
ADJUDICATORY HEARING ON NEW
JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION
FILE NO. 1803-02-0005.1 FHA 110001.

_____

Argued March 6, 2018 – Decided October 17, 2018

Before Judges Yannotti, Mawla and DeAlmeida.

On appeal from Flood Hazard Verification Approval
No. 1803-02-0005.1 FHA 110001 by the New Jersey
Department of Environmental Protection.

William C. Sullivan, Jr. argued the cause for appellant
Village Supermarket, Inc. (Scarinci & Hollenbeck,
LLC, attorneys; William C. Sullivan, Jr., on the briefs).

Jung W. Kim, Deputy Attorney General, argued the
cause for respondent Department of Environmental
Protection (Gurbir S. Grewal, Attorney General,
attorney; Melissa H. Raksa, Assistant Attorney
General, of counsel; Jung W. Kim, on the brief).

Stuart J. Lieberman argued the cause for intervenor-
respondent Bernardsville Centre, LLC (Lieberman &
Blecher, PC, attorneys; Stuart J. Lieberman, of counsel;
Michael G. Sinkevich and Brittany W. DeBord, on the
brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Appellant Village Super Market, Inc. (VSM) challenges the June 6, 2016 order of the Commissioner, Department of Environmental Protection (DEP) denying its request for an adjudicatory hearing with respect to two DEP decisions concerning property owned by respondent Bernardsville Centre, LLC (BC). We affirm.

I.

The following facts are taken from the record. BC owns real property on Route 202 in Bernardsville, on which it operates a shopping center that includes a Kings Supermarket. Berns Realty Company (Berns) owns property on the other side of Route 202 near BC's property. Berns's property is developed with a multi-tenant retail shopping center in which VSM, as a lessee, operates a ShopRite supermarket that competes with the Kings on BC's property.

BC sought to develop a portion of its property to expand its shopping center. BC's development plans were dependent on the regulatory status of two water features on its property: an unnamed tributary of Penn's Brook (the Tributary), and an erosional drainage area that developed from a Department of Transportation (DOT) pipe directing storm water runoff from Route 202 onto

BC's property (the Erosion Feature). Neither the Tributary nor the Erosion Feature are on the property leased by VSM.

The presence of these features on BC's property implicates two statutes: the Flood Hazard Area Control Act (FHACA), N.J.S.A. 58:16A-50 to -103, and the Freshwater Wetlands Protection Act (FWPA), N.J.S.A. 13:9B-1 to -30. Under the FHACA, any development that encroaches on a flood hazard area or riparian zone of any regulated water requires a permit from the DEP. N.J.A.C. 7:13-2.1 to -2.4.[1] Before seeking a permit, an applicant may apply for a flood hazard area verification (FHAV) to establish the "flood hazard area design flood elevation, flood hazard area limit, floodway limit, and/or riparian zone limit on a site or any portion of a site." N.J.A.C. 7:13-1.2; N.J.A.C. 7:13-6.1.

The FWPA allows an applicant to request a Letter of Interpretation (LOI) from the DEP prior to applying for a development permit. N.J.A.C. 7:7A-3.1(d). An LOI is DEP's official determination as to the existence of freshwater wetlands, transition areas, and/or State open waters on a site, their boundaries, and the resource value classification of on-site freshwater wetlands. N.J.A.C. 7:7A-3.1 to -3.4. An LOI is valid for five years and may be extended an

_____

[1] All references are to the 2007 regulations in effect at the time that the DEP issued the decision on appeal. The DEP amended the flood hazard area regulations effective June 20, 2016. See 47 N.J.R. 1041(a); 48 N.J.R. 1067(a).

A-5001-15T3

additional five years provided the information upon which the original LOI was based remains valid. N.J.A.C. 7:7A-4.6(b). The DEP may void an LOI and issue a new LOI where it determines the original LOI was based on "inaccurate or incomplete" information. N.J.A.C. 7:7A-4.6(a).

On May 22, 1997, the DEP issued a prior owner of BC's property an LOI (1997 LOI) that identified the boundaries of the Tributary and the Erosion Feature on the parcel, and classified both as State open waters. The LOI also identified wetlands near the Erosion Feature and classified them as having intermediate resource value with a fifty-foot buffer zone. The DEP's findings were based on a 1997 report by Schoor DePalma, an engineering and design firm (the Schoor DePalma Report).

On April 1, 1998, a different prior owner of BC's property requested modification of the 1997 LOI to reclassify the Erosion Feature as unregulated because it is manmade, having been caused by storm water discharge from a pipe. In addition, the application requested that the wetlands previously identified in the area of the Erosion Feature be characterized instead as a gravel/silt accumulation area. The application was supported by an expert report that relied on various historical sources, including an aerial photograph of the

site, soil surveys, maps, topographic information, and DOT plans for the relevant section of Route 202.

On July 27, 1998, after an investigation, DEP issued a modified LOI (1998 LOI) reclassifying the Erosion Feature as non-regulated. DEP's written determination, however, maintained the language in the 1997 LOI that wetlands on the property are of intermediate resource value with a fifty-foot buffer area. This language was an apparent contradiction to the agency's determination that the Erosion Feature was non-regulated.

On May 20, 2002, a prospective developer of BC's property submitted an application seeking a reissuance of the 1997 LOI, as modified by the 1998 LOI, because it was due to expire. On June 28, 2002, DEP extended the 1997 LOI, as modified by the 1998 LOI, for five years (2002 LOI).

On August 10, 2007, BC submitted an application for a new LOI because the 2002 LOI had expired. DEP reviewed the information in BC's application, obtained additional information, considered submissions from the public, and conducted two site inspections. DEP personnel collected soil, vegetation, and hydrology samples at two locations on the property. Neither sample produced evidence of wetlands.

A-5001-15T3

Based on these findings, on May 27, 2008, DEP issued an LOI (2008 LOI), stating that wetlands are not present on BC's property, identifying the Erosion Feature as not regulated, and identifying the Tributary as State open water. The 2008 LOI, however, refers to the 1997 Schoor DePalma report, which depicts wetlands, including in the areas of the Erosion Feature, as accurate. Reference to the 1997 Schoor DePalma report is an apparent contradiction to DEP's conclusion that wetlands are not present on BC's property.

On May 18, 2010, VSM filed an application for an FHAV. Although the application referenced the property on which VSM is a tenant, VSM actually sought a jurisdictional determination for the Tributary on BC's property. The application described the Tributary as Category One (C-1) surface water with a three-hundred-foot riparian buffer, which extends slightly into the parking lot on the property where VSM is a tenant. The extension of the buffer to that parcel is the sole alleged jurisdictional basis for VSM's application. This application identifies the Erosion Feature as an "erosion ditch" with no riparian buffer.

On September 14, 2010, DEP issued an FHAV to VSM (2010 FHAV) that classified two unnamed tributaries in the vicinity of Berns's property, including the Tributary, as C-1 streams. To safeguard their aesthetic value and ecological integrity, C-1 streams are protected from measurable changes in water quality

6

based on their exceptional ecological, recreational and water supply significance or exceptional fisheries resources.   N.J.A.C. 7:13-1.2; N.J.A.C. 7:9B-1.4; N.J.A.C. 7:9B-1.15(c) to (i).  As a result of this classification, DEP assigned a three-hundred-foot riparian zone around the features.   The riparian zone designated by DEP substantially affected BC's property, given the regulatory restrictions in such zones, but did not extend to the property VSM leases.

On January 19, 2011, BC applied for a new FHAV for its property.  This application classified the Erosion Feature as a non-regulated erosional gully, and the Tributary as a Fresh Water Two-Non-Trout (FW2-NT) water feature with a fifty-foot riparian zone.  See N.J.A.C. 7:9B-1.15(b).

On January 24, 2011, VSM submitted a request to DEP to void the 2008 LOI issued to BC because it conflicted with the 2010 FHAV issued to VSM.  In support of its request, VSM cited N.J.A.C. 7:7A-4.6(a), which provides that an applicant may rely on an LOI for five years, "unless the letter of interpretation is determined to have been based on inaccurate or incomplete information, in which case the department may void the original letter of interpretation."[2]

---

[2]  In the 2011 application, VSM is described as the owner of the parcel on which it operates a supermarket.  This incorrect characterization of VSM's interest in the property is repeated in VSM's merits brief filed in this court.  After BC submitted with its merits brief a 2003 deed establishing that Berns owns the property, VSM's counsel acknowledged that VSM is a tenant at the property.

As explained above, the 2008 LOI significantly reduces regulatory controls on BC's property because it contains a determination that wetlands are not present and does not establish a riparian zone around the Tributary. The 2010 LOI, on the other hand, increases regulatory controls on BC's property because it contains a determination that the Tributary requires a three-hundred-foot riparian zone. Voiding the 2008 LOI would not have an impact on the property VSM leases, but would leave the 2010 LOI and its regulatory restrictions on BC's property in place. It appears that VSM's interest in vacating the 2008 LOI is to inhibit BC, its competitor, from developing its property.

On March 18, 2011, DEP issued a letter to counsel for BC and VSM stating that the 2010 FHAV issued to VSM was incorrect because the classification of the Tributary as a C-1 water with a three-hundred-foot riparian zone was based on inaccurate mapping. DEP advised that it would determine the correct regulatory classifications of the water features and riparian zones on BC's property, and reconsider both the 2008 LOI and the 2010 FHAV, when deciding BC's then-pending FHAV application. The agency requested both parties to submit all materials they deemed relevant and stated that the matter would be considered on written submissions, without a public hearing.

On April 18, 2011, DEP issued two determinations. In the first, the agency determined that the 2010 FHAV issued to VSM was incorrect when it designated the Tributary as a C-1 water requiring a three-hundred-foot buffer zone. The error was the result of DEP's reliance on inaccurate mapping. The agency, therefore, vacated the 2010 FHAV.

In the second, DEP issued an FHAV to BC (2011 FHAV) confirming its determination that classification of the Tributary as a C-1 water was a result of incorrect mapping, and designating the Tributary as a FW2-NT with a fifty-foot riparian zone. The 2011 FHAV also confirmed that the Erosion Feature was not regulated because it was manmade and found an absence of wetlands on the property. DEP noted that it had terminated the 2010 FHAV issued to VSM and declined to invalidate the 2008 LOI.

On June 1, 2011, VSM requested an adjudicatory hearing. VSM sought to challenge: (1) the 2011 FHAV issued to BC; (2) DEP's affirmation of the 2008 LOI; and (3) the agency's termination of the 2010 FHAV issued to VSM.

On October 28, 2011, the DEP granted appellant's hearing request with respect to the termination of the 2010 FHAV. BC's motion to intervene in that matter was granted on April 23, 2015. The matter is pending before the Office of Administrative Law and is not before this court.

9

On June 6, 2016, the Commissioner denied VSM's request for a hearing with respect to the 2011 FHAV issued to BC and the affirmation of the 2008 LOI. He found that VSM was a third party with no statutory right to a hearing, and had no particularized property interest affected by the 2011 FHAV and the 2008 LOI. Despite denying VSM's request for a hearing, the Commissioner reviewed and affirmed the underlying substantive decisions.[3]

This appeal followed.[4]

## II.

Appellate review of agency action is deferential and limited. In re Herrmann, 192 N.J. 19, 27 (2007). A "strong presumption of reasonableness attaches to the actions of the administrative agencies." In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (1993)). We are not bound by an agency's interpretation of the law. Thurber v. City of Burlington, 191 N.J. 487, 502 (2007) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)). We will, however, generally "afford

---

[3] The Commissioner's written decision incorrectly refers to VSM as the owner of the property on which it operates its supermarket.

[4] On October 19, 2012, DEP issued three permits to BC authorizing construction of drainage improvements at the property, realignment of the sanitary sewer main, and elimination of the Erosion Feature. BC completed this work in 2013. BC's brief states that it is actively completing expansion of the shopping center.

substantial deference to an agency's interpretation of a statute that the agency is charged with enforcing." Patel v. N.J. Motor Vehicle Comm'n, 200 N.J. 413, 420 (2009) (quoting Richardson v. Board of Trs., 192 N.J. 189, 196 (2007)). Substantial deference must be extended to an agency's interpretation of its own regulations, particularly on technical matters within the agency's expertise. In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 488-89 (2004).

Under the Administrative Procedure Act (APA or the Act), an "applicant" in entitled to request an adjudicatory hearing with respect to a decision by the DEP on its application. The APA defines "applicant" as an entity seeking an "agency license, permit, certificate, approval, chapter, registration[,] or other form of permission required by law." N.J.S.A. 52:14B-3.2. The Act, however, "strictly limits the situations in which third parties are entitled to . . . a formal hearing to challenge a permit application." In re Riverview Dev., LLC, Waterfront Dev. Permit, 411 N.J. Super. 409, 424 (App. Div. 2010). A third party is defined as any person other than:

> a.   An applicant . . . .
>
> b.   A State agency; or
>
> c.   A person who has a particularized property interest sufficient to require a hearing on constitutional or statutory grounds.

[N.J.S.A. 52:14B-3.2.]

Accordingly, a non-applicant can demand an adjudicatory hearing only where the non-applicant can demonstrate: (1) a right to a hearing under an applicable statute; or (2) a "particularized property interest" of constitutional significance. In re Freshwater Wetlands Statewide Gen. Permits, 185 N.J. 452, 463–64 (2006). These limitations are "intended to prevent the processing of permit applications by State agencies from being bogged down by time-consuming and costly formal hearings," which "consume substantial public and private resources." In re Riverview Dev., 411 N.J. Super. at 424.

Having considered the record in light of the applicable legal precedents, we conclude that the Commissioner's decision denying VSM's request for an adjudicatory hearing is sound. VSM is not an applicant with respect to either the 2011 FHAV issued to BC or the 2008 LOI concerning BC's property. VSM did not seek a permit to develop either BC's property, or the parcel on which it is a tenant, or any other permitting authority from the agency.

Nor does the record establish that VSM has a statutory right to an adjudicatory hearing. Neither the FHACA nor the FWPA provide a third-party with a statutory right to appeal a decision issued to an applicant. In re Auth. For Freshwater Wetlands Statewide Gen. Permit 6, 433 N.J. Super. 385, 407 (App.

12

Div. 2013) (finding that the FWPA does not provide third-party objectors with the right to a plenary administrative hearing to challenge the DEP's issuance of a permit); In re Riverview Dev., 411 N.J. Super. at 429 (where third parties did not have a statutory right to a hearing guaranteed under the FHACA). VSM identified no other State or federal statute entitling it to a hearing.

Finally, we agree with the Commissioner's determination that VSM does not have a property interest sufficient to create a constitutional right to a hearing with respect to either the 2011 FHAV or the 2008 LOI. "[T]hird parties generally are not able to meet the stringent requirements for constitutional standing in respect of an adjudicatory hearing." In re DEP Permit No. NJ0025241, 185 N.J. 474, 482 (2006). VSM does not own the property on which it operates its supermarket. It is instead one of several tenants at the property. Furthermore, even if VSM owned that parcel, "landowners objecting to the development of neighboring property" do not, by proximity alone, "have a particularized property interest warranting an adversarial hearing before an administrative law judge." In re Freshwater Wetlands Gen. Permits, 185 N.J. at 470. Our courts have consistently held that a generalized property right shared with other property owners, such as collateral economic impacts, traffic, views, quality of life, recreational interest, and property values, are insufficient to

establish a third-party right to an adjudicatory hearing. In re Riverview Dev., 411 N.J. Super. at 429; In re Freshwater Wetlands Gen. Permits, 185 N.J. at 470; In re AMICO/Tunnel Carwash, 371 N.J. Super. 199, 212 (App. Div. 2004); In re Waterfront Dev. Permit No. WD88-0443-1, Lincoln Harbor Final Dev., 244 N.J. Super. 426, 436 (App. Div. 1990); Spalt v. DEP, 237 N.J. Super. 206, 212 (App. Div. 1989); Normandy Beach Improv. Ass'n v. Comm'r, DEP, 193 N.J. Super. 57, 61 (App. Div. 1983).

With regard to the 2011 FHAV, VSM's primary objection is DEP's reclassification of the Tributary. As the Commissioner indicated, however,

> [w]hile the classification of the [T]ributary may indirectly affect VSM inasmuch as it changes the previously issued [2010 FHAV] (and the associated riparian zone) it does not rise to the level of a "particularized property interest" of constitutional significance because the Tributary is not located on VSM's property and the reduction of the [three-hundred] foot riparian zone formerly associated with the Tributary serves only to reduce the impact of the Department's regulation of the Tributary on VSM's property. Therefore, VSM's interest is nothing more than a "generalized property right shared with" other surrounding property owners.

We agree.

We reject VSM's argument that it should be considered an "applicant" with respect to the 2011 FHAV and the 2008 LOI because those applications

14

concern the same factual bases as VSM's 2010 FHAV. We note, as did the Commissioner, that all of VSM's contentions with respect to the water features of BC's property will be addressed at VSM's hearing on the termination of the 2010 FHAV, where VSM will have an opportunity to establish its position that the Tributary requires a three-hundred-foot riparian zone that extends to the parking lot of the property on which VSM is a tenant.

We find VSM's remaining arguments, including its challenge to the substantive bases of the 2011 FHAV and the 2008 LOI, to be without merit sufficient to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-5001-15T3