**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4810-17T1

IN THE MATTER OF THE
FRANK SALAS AND JOAN
SALAS AMELIORATION
AUTHORIZATION AND WATER
QUALITY CERTIFICATE NO.
1506-02-0037.1 APL110001
CHALLENGED BY DONALD F.
BURKE AND THE ASSOCIATION
FOR GOVERNMENTAL
RESPONSIBILITY, ETHICS AND
TRANSPARENCY.

_____

Argued December 10, 2019 – Decided January 28, 2020

Before Judges Yannotti, Hoffman and Firko.

On appeal from the New Jersey Department of Environmental Protection.

Donald F. Burke, Jr., argued the cause for appellants Donald F. Burke, Patricia F. Burke, Harry Sowell, Jody K. Sowell, Graham Starr, Helena Leonard, Nancy Bradshaw and the Association for Governmental Responsibility, Ethics and Transparency (Law Office of Donald F. Burke, attorneys; Donald F. Burke and Donald F. Burke, Jr., on the briefs).

Ira E. Weiner argued the cause for respondents Frank and Joan Salas (Beattie Padovano, LLC, attorneys; Ira E. Weiner, of counsel and on the brief; Martin Richard Kafafian, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Department of Environmental Protection (Melissa H. Raksa, Assistant Attorney General, of counsel; Kathrine Motley Hunt, Deputy Attorney General, on the brief).

PER CURIAM

Donald F. Burke, Patricia F. Burke, Harry Sowell, Jody K. Sowell, Graham Starr, Helena Leonard, Nancy Bradshaw and the Association for Governmental Responsibility, Ethics and Transparency (collectively, the Association) appeal from a final determination of the Acting Commissioner of the New Jersey Department of Environmental Protection (DEP) denying their application for an adjudicatory hearing and rejecting a challenge to the amelioration authorization and water quality certificate issued to Frank Salas and Joan Salas (collectively, Salas). We affirm.

I.

We briefly summarize the relevant facts and procedural history of this dispute. Salas owns about one half-acre of real property in Brick Township, and in 2002, filed an application with the DEP pursuant to the Coastal Area Facility Review Act (CAFRA), N.J.S.A. 13:19-1 to -21, for a general permit (GP), which

2 A-4810-17T1

would allow the construction of a single-family home and driveway on the property. In December 2003, the DEP issued the GP, but required Salas to obtain a permit pursuant to the Freshwater Wetlands Protection Act, (FWPA), N.J.S.A. 13:9B-1 to -30, to allow the filling of wetlands on the property.

In January 2004, Salas filed an administrative appeal challenging the conditions the DEP placed on the GP. Salas also applied to the DEP for a letter of interpretation (LOI) confirming the presence of freshwater wetlands or any wetlands transition area on the property.[1] In March 2004, the DEP issued the LOI, finding the property consisted of freshwater or tidal wetlands and an associated transition area. Salas filed an administrative appeal challenging the DEP's LOI determination.

The DEP referred the administrative appeals to the Office of Administrative Law (OAL) for a hearing before an Administrative Law Judge (ALJ). In November 2005, the ALJ issued an initial decision on the appeals. The ALJ concluded that the DEP's LOI determination was supported by the record, and the conditions the DEP imposed on the GP were appropriate. On

---

[1] An LOI is the department's official determination of the presence or absence of wetlands, State open waters, or transition areas; or the verification or delineation of such wetlands, waters, or areas. N.J.A.C. 7:7A-3.1.

December 29, 2005, the Commissioner of the DEP issued a final decision on the appeals, adopting the ALJ's initial decision.

In February 2008, Salas submitted an application to the DEP for a freshwater wetlands individual permit. In October 2010, the DEP denied the application. Salas filed an administrative appeal from that decision, and the DEP referred the matter to the OAL for a hearing. Thereafter, Salas and the DEP reached a settlement, which was memorialized in a stipulation executed in December 2014.

The DEP and Salas agreed that the DEP would reconsider the application of its regulatory standards to the subject property to address Salas's claim that the application of those standards resulted in a taking of property without just compensation. They agreed the subject property consists entirely of freshwater and coastal wetlands and an associated transition area.

The stipulation noted that Salas had revised the plans for the proposed dwelling and driveway. Salas agreed to reduce the footprint of the dwelling to .093 acres of the delineated wetlands, construct the dwelling on pilings, and use pervious material for the driveway. Salas also agreed to make a contribution to the Wetlands Mitigation Council or some other suitable entity.

A-4810-17T1

The DEP and Salas stipulated that the DEP could not approve the revised plan for the property under the applicable regulatory standards governing coastal zone management and individual freshwater wetlands permits. The DEP agreed to initiate reconsideration of the permit denial and authorization of the revised plan, in accordance with N.J.A.C. 7:7A-17.1 (now N.J.A.C. 7:7A-13.1).[2]

The rule, which was promulgated to implement N.J.S.A. 13:9:B-22(b), provides that "[i]f the issuance, modification, or denial of an individual freshwater wetlands permit would constitute a taking without just compensation," the DEP may

> 1. [c]ompensate the property owner for the lost value of the property;
>
> 2. [c]ondemn the affected property pursuant to the Eminent Domain Act of 1971, N.J.S.A. 20:3-1 [to -50]; and/or
>
> 3. [r]econsider and modify its action or inaction concerning a permit so as to minimize the detrimental effect to the value of the property.
>
> [N.J.A.C. 7:7A-13.1(a).]

---

[2] The rule was codified at N.J.A.C. 7:7A-17.1, but re-codified with certain changes at N.J.A.C. 7:7A-13.1, effective December 18, 2017. See 49 N.J.R. 834(a) (May 1, 2017); 49 N.J.R. 3849(a) (Dec. 18, 2017).

A-4810-17T1

The DEP and Salas agreed that Salas would file a complaint in the trial court against the DEP asserting an inverse condemnation claim. Within sixty days after filing and service of the complaint, the DEP would publish notice of its intent to reconsider the denial of the permit and application of its regulatory standards to the subject property. The DEP would provide for a fifteen-day public comment period, as required by its regulations.

The stipulation also stated that within 180 days after publication of the notice, the DEP would issue its written analysis of the applicable regulatory standards, review the revised plan and Salas's proposed mitigation contribution, and issue a final decision in the matter. Salas agreed to dismiss the administrative appeal challenging the permit denial; however, Salas retained the right to reinstate that appeal if the DEP did not issue an amelioration authorization allowing implementation of the revised plan.

In April 2016, Salas filed a complaint in the trial court against the DEP asserting an inverse condemnation claim. In June 2016, the Burkes filed a motion to intervene in that action. Later that month, the DEP published notice of its intent to reconsider the denial of the permit and the application of its regulatory standards to the Salas property.

6

The Association then filed a complaint in the trial court against the DEP, various DEP employees, and Salas. In that action, the Association challenged the DEP's decision to reconsider the denial of the Salas permit application. The Association sought, among other relief, a declaratory judgment finding that Salas had not established entitlement to the issuance of an amelioration authorization under the FWPA and the DEP's regulation, or a determination that the DEP's denial of the wetlands permit constituted a regulatory taking.

In August 2016, the DEP filed a motion to dismiss the Association's declaratory judgment action. The DEP argued that the Law Division did not have subject matter jurisdiction to hear a challenge to its decision to reconsider the permit denial. In September 2016, the Association filed a motion seeking to enjoin the DEP's reconsideration of the permit denial. The trial court denied the motion. In November 2016, the Association filed another motion in the trial court seeking to enjoin the DEP from continuing the reconsideration process, and a motion for summary judgment.

On January 19, 2017, the DEP issued the amelioration authorization to Salas. The agency permitted Salas to construct the dwelling and driveway on the subject property, in accordance with the revised plan and other stated conditions. Thereafter, the trial court denied Burke's motion to intervene in

Salas's inverse condemnation action and denied the Association's motion for summary judgment.

In January 2017, the trial court granted the DEP's motion and dismissed both actions with prejudice. The Association appealed and we affirmed the trial court's orders. Salas v. State, Dep't of Envtl. Prot., A-2825-16 (App. Div. Sept. 25, 2018) (slip op. at 3-9).

In February 2017, the Association requested an adjudicatory hearing to challenge the DEP's amelioration authorization and issuance of the water quality certificate. The Acting Commissioner issued a final decision dated May 10, 2018, which denied the request for an adjudicatory hearing and rejected the Association's challenge to the amelioration determination and certificate. This appeal followed.

On appeal, the Association argues: (1) the DEP's action violated N.J.S.A. 13:9B-22(b) because a court never determined that the DEP's initial denial of the Salas permit constitutes a taking of property without just compensation; (2) the record does not support the DEP's determination that it faced a litigation risk in the Salas inverse condemnation action; and (3) the DEP's final decision must be reversed and the matter remanded for an adjudicatory hearing.

II.

We first consider the Association's contention that the DEP's action was inconsistent with N.J.S.A. 13:9B-22(b), which provides that:

> [i]f the court determines that the issuance, modification, or denial of a freshwater wetlands permit by the [DEP] pursuant to this act constitutes a taking of property without just compensation, the court shall give the department the option of compensating the property owner for the full amount of the lost value, condemning the affected property pursuant to the provisions of the "Eminent Domain Act of 1971," [N.J.S.A. 20:3-1 to -50], or modifying its action or inaction concerning the property so as to minimize the detrimental effect to the value of the property.

The Association argues that before the DEP may exercise its authority under the statute, a court first must determine the denial of the permit constitutes a taking of property without just compensation. We disagree.

In East Cape May Associates v. State, Dep't of Envtl. Prot., 300 N.J. Super. 325, 328, the plaintiff was the owner of about 100 acres of undeveloped land in Cape May, which consisted mostly of freshwater wetlands of "exceptional resource value." The plaintiff wanted to develop the property for residential use, and the DEP had denied the prior owner's application for a development permit under CAFRA. Id. at 329. The plaintiff thereafter acquired the property and filed a complaint in the Law Division, alleging that the DEP's

denial of the permit application effected a regulatory taking of its property in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Id. at 334.

The trial court granted the plaintiff's motion for summary judgment, finding that there had been a regulatory taking of the plaintiff's property. Id. at 335. The court rejected the DEP's contention that a taking had not occurred because the State had not yet availed itself of the opportunity under N.J.S.A. 13:9B-22(b) to reconsider the permit denial. Ibid. The court determined that even if the DEP exercised its authority under the statute, there had already been a temporary taking. Ibid.

The DEP appealed and we reversed. Id. at 354. We held that no compensable taking had occurred. Id. at 340. We stated that

> [o]ne purpose of N.J.S.A. 13:9B-22b is obviously to avoid exposing the State to the risk of having to acquire property by the exercise of the power of eminent domain whenever an application for a development permit is denied. We are obligated to construe the statute to effectuate that purpose. It can and should be effectuated by interpreting the statute to mean that the administrative process leading to the issuance or denial of a development permit is not complete until the State has had the opportunity to decide whether the application of the regulations to a particular property should be relaxed pursuant to N.J.S.A. 13:9B-22b to avoid a taking. Constitutional considerations require us to construe the statute to also serve another purpose.

A-4810-17T1

The regulatory scheme governing properties like that at issue in the present case is extremely comprehensive and complex. It entrusts a very expansive discretion to the DEP. To require a developer to submit a multiplicity of successive applications in order to attempt to divine, without administrative guidance, what, if any, development of its property will be permitted would be inconsistent with due process of law. . . .

[Ibid.]

We therefore interpreted the relevant section of N.J.S.A. 13:9B-22(b) to read, "If the court [or the DEP] determines that the issuance, modification, or denial of a freshwater wetlands permit by the department pursuant to this act would constitute a taking of property without just compensation, the court shall give the department the option of" compensating the owner, condemning the property, or modifying its action concerning the property. Id. at 341.

We said that "the statute requires the DEP and the developer to confer about the realistic prospects for development" when the agency has taken a position that would limit the use of property in a manner that would constitute a constitutional taking. Ibid. We stated that N.J.S.A. 13:9B-22(b) "contemplates and requires this mutual effort and administrative guidance," which is part of the administrative process envisioned by the applicable regulatory scheme. Ibid. We held that, "Until the developer has sought and obtained the requisite

11

guidance from the DEP, or the DEP has failed or refused to provide it, no permanent taking has occurred." Ibid.

We added that if in the end, the developer is allowed reasonable utilization of its property, it would not necessarily be entitled to compensation for the delay between the initial denial of the application and issuance of the permit. Id. at 342. The delay incident to the permit process "is a burden inherent in the ownership of property and not a constitutional taking." Ibid. (citations omitted). We stated that a property owner might be entitled to compensation if the application process is "unduly protracted." Id. at 342-43.

We addressed this issue again in Griffith v. State, Dep't of Envtl. Prot., 340 N.J. Super. 596 (App. Div. 2001). In that case, the plaintiff was the owner of certain property, which included freshwater wetlands. Id. at 600. The plaintiff filed an application with the DEP seeking a freshwater wetlands permit that would allow construction of a twenty-six-foot wide access road over the wetlands portion of the property. Ibid.

The DEP initially issued a permit allowing construction of the road but limited it to a width of sixteen feet. Id. at 602. The plaintiff then sought a permit pursuant to CAFRA, which would allow development of the upland property. Ibid. The DEP cancelled the CAFRA application, finding that it had never

12

declared the application complete and the plaintiff was not entitled to the benefit of rules in effect before amendments to CAFRA were enacted and new rules adopted. Id. at 603-04.

The plaintiff appealed from the DEP's final decisions. Id. at 603. We affirmed the decision regarding the CAFRA permit, but held that the imposition of the sixteen-foot restriction on the road was arbitrary. Id. at 604. Thereafter, the DEP invited the plaintiff to submit another CAFRA application. Id. at 605.

The plaintiff chose instead to continue an inverse condemnation action it had previously filed. Ibid. Before the entry of final judgment in that case, the DEP exercised its authority under N.J.S.A. 13:9B-22(b) and granted the plaintiff all of the approvals necessary to construct the twenty-six-foot road and subdivide the upland portion of the property to allow residential development. Id. at 600. The trial court held, however, that prior to the amelioration decision, the DEP had effected a temporary taking of the property. Ibid.

We reversed the trial court's order and reaffirmed our decision in East Cape May. Id. at 608-09. We held that amelioration under N.J.S.A. 13:9B-22(b) is part of the administrative permitting process, and the process is not complete until the DEP has had the opportunity to determine whether the application of regulations to any particular property should be relaxed. Id. at

608 (quoting East Cape May, 300 N.J. Super. at 340). We also held there had been no unreasonable delay on the part of the DEP in granting the approval required to construct the road and develop the property. Id. at 608-09.

Thus, there is no merit whatsoever to the Association's contention that N.J.S.A. 13:9B-22(b) requires a court to determine that the DEP's action has effected a taking of property without just compensation before the agency can exercise its power of amelioration. We therefore conclude that the DEP may initiate the amelioration process if it reasonably finds that application of its regulatory standards may result in the taking of property without just compensation. As held in East Cape May and Griffith, N.J.S.A. 13:9B-22(b) does not require a court to find that the DEP's regulatory action had effected a compensable taking before the DEP can exercise its power of amelioration under the statute.

## III.

The Association next argues there is insufficient evidence in the record to show the DEP faced a "litigation risk" in the Salas inverse condemnation action. The Association contends the DEP could not reasonably assume its regulation of the Salas property would result in a regulatory taking. The Association contends the DEP's decision is inconsistent with its earlier determination that

14

Salas did not have a reasonable, investment-backed expectation in developing the property.

We note that the scope of our review of the factual findings of an administrative agency is limited. We must defer to the agency's findings of fact if they could reasonably have been reached on sufficient credible evidence in the record. In re Young, 202 N.J. 50, 70-71 (2010) (citations omitted). We also must accord significant weight to the agency's expertise where, as in this case, such expertise is relevant. Circus Liquors, Inc. v. Middletown Twp., 199 N.J. 1, 10 (2009); In re Stream Encroachment Permit, 402 N.J. Super. 587, 597 (App. Div. 2008).

In her final decision, the Acting Commissioner considered whether Salas's investment in the property was reasonable and reflected reasonable expectations, as required by N.J.A.C. 7:7A-17.1(c)(1) (now N.J.A.C. 7:7A-13.1(c)(1)). The Acting Commissioner noted that Salas purchased the subject property in January 2002. At that time, the property was zoned for residential use, had access to potable water and an existing sewer line, and was "an infill lot" surrounded by single-family dwellings.

The Acting Commissioner observed that before purchasing the property, Salas hired consultants to survey the site and develop a plan for a single-family

home. The survey and design plan indicated that a portion of the property contained uplands and was developable. The survey and design plan incorporated a prior survey undertaken by the prior owner of the property, which had been part of a prior owner's application to the DEP for an LOI.

The DEP issued the LOI in 1991, which found that extensive portions of the property consisted of freshwater wetlands with intermediate resource value and associated transition areas. The Salases asserted, however, they never saw the LOI. Moreover, the LOI expired in 1996. When the property was purchased, Salas understood there was no current LOI for the subject property.

The Acting Commissioner found that Salas's intent to develop the property with a single-family dwelling and the actions taken to do so were reasonable and consistent with the information available at the time. That information included access of the property to utilities, the character of the neighborhood, and the land-survey information that Salas's consultants had obtained.

The Acting Commissioner further found there was a litigation risk to the DEP from Salas's takings complaint. The Acting Commissioner commented that if the DEP did not reconsider its denial of a permit to construct a dwelling on the property, "Salas would have been left with no beneficial economically viable use of the [p]roperty."

We are convinced there is sufficient credible evidence in the record to support the Acting Commissioner's finding that when the property was purchased, Salas had reasonable, investment-back expectations a single-family dwelling could be constructed on the property. There is also sufficient credible evidence in the record to support the Acting Commissioner's finding that the DEP faced a litigation risk from the Salas's takings complaint.

We reject the Association's contention that the DEP was in some sense bound by its earlier decision on the permit application. That earlier decision was subject to reconsideration as part of the amelioration process under N.J.S.A. 13:9B-22(b).

We also reject the Association's contention that the 1991 LOI placed Salas on notice that use of the property could be limited by the DEP's regulatory standards. As we have explained, the LOI expired before Salas purchased the lot and there was no LOI in effect when the property was purchased in 1992. Thus, the 1991 LOI did not preclude Salas from having reasonable investment-backed expectations that a single-family home could be constructed on the property.

We have considered the Association's other contentions regarding the DEP's amelioration decision.  We conclude the Association's arguments lack sufficient merit to warrant discussion.  R. 2:11-3(3)(1)(E).

IV.

The Association also argues that the matter should be remanded to the DEP for an adjudicatory hearing on its objections to the amelioration authorization.  Again, we disagree.  Here, the Acting Commissioner correctly found that the Association did not have a right to an adjudicatory hearing.

The FWPA confers the right to an adjudicatory hearing on the property owner whose application for a permit is denied.  In re Freshwater Wetlands Statewide Gen. Permits, 185 N.J. 452, 463 (2006) (citing N.J.S.A. 13:9B-20).  The FWPA "does not bestow a similar right to an abutting landowner who wants to prevent the issuance of such a permit."  Ibid.  Furthermore, "[w]ithout a statutory right to a trial-type hearing, the objectors must show that they have a 'particularized property interest sufficient to require a hearing on constitutional . . . grounds.'"  Id. at 463-64 (citing N.J.S.A. 52:14B-3.1, -3.2).

The Burkes own a neighboring residential lot and the other members of the Association own dwellings in the general area of the subject property.  Such generalized property rights are insufficient to establish standing for an

adjudicatory hearing to contest the grant of a permit. <u>See</u> <u>In re Amico/Tunnel Carwash</u>, 371 N.J. Super. 199, 211 (App. Div. 2004); <u>Spalt v. State, Dep't of Envtl. Prot.</u>, 237 N.J. Super. 206, 212 (App. Div. 1989); <u>Normandy Beach Improvement Ass'n v. Comm'r</u>, 193 N.J. Super. 57, 60-61 (App. Div. 1983).

Therefore, the Acting Commissioner correctly determined that the Association was not entitled to an adjudicatory hearing on their objections to the agency's amelioration determination and water quality certificate. The Association's arguments on this issue lack sufficient merit to warrant further discussion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4810-17T1