237 N.J. Super. 206 (1989)
567 A.2d 264
EVAN SPALT, JAMES JENKS, CONSTANCE PILLING, WILLIAM D. DECAMP, JR., AND BARNEGAT BAY PRESERVATION COALITION, PLAINTIFFS-APPELLANTS,
v.
NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, DIVISION OF COASTAL RESOURCES WITHIN NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION AND TRENDOR CORPORATION, A NEW JERSEY CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 25, 1989.
Decided December 7, 1989.
*208 Before Judges J.H. COLEMAN, MUIR, Jr., and SKILLMAN.
Nathan M. Edelstein argued the cause for appellants (Ridolfi, Friedman, Frank, Edelstein & Bernstein, attorneys; Nathan M. Edelstein on the brief).
Stephen E. Brower, Deputy Attorney General, argued the cause for respondent, New Jersey Department of Environmental Protection (Peter N. Perretti, Jr., Attorney General of New Jersey, attorney; Mary C. Jacobson, Deputy Attorney General, of counsel; Stephen E. Brower on the brief).
Michael J. Gross argued the cause for respondent Trendor Corporation (Giordano, Halleran & Ciesla, attorneys; Michael J. Gross of counsel; Patrick J. McNamara and Andrew B. Robins on the brief).
The opinion of the court was delivered by COLEMAN, J.H., P.J.A.D.
The key issue raised in this appeal is whether plaintiffs were entitled to an adjudicatory hearing. Our careful study of the record persuades us to conclude they were not. Hence, we affirm.

I
A rather detailed procedural and factual history is essential to an understanding and resolution of the issues raised. Defendant Trendor Corporation (Trendor) has proposed construction *209 of a 134 dwelling unit, 208 slip boat marina project called Pelican Cove. The project would redevelop an existing marina located near Barnegat Bay in Bricktown, Ocean County, New Jersey. Plaintiff Barnegat Bay Preservation Coalition is a citizen's group concerned with the preservation and protection of Barnegat Bay. The other plaintiffs, all members of the Coalition, are leaseholders in Barnegat Bay area shellfish beds, professional shell fishermen, and area property owners.
Trendor applied to the New Jersey Department of Environmental Protection (DEP) for a Coastal Area Facility Review Act (CAFRA) permit, pursuant to N.J.S.A. 13:19-1 et seq., because of the number of dwelling units to be constructed. N.J.S.A. 13:19-3(c)(5). Trendor also applied for a Waterfront Development Act (WDA) permit pursuant to N.J.S.A. 12:5-1 et seq., because the slip boat marina construction requires work to be performed in a state navigable waterway or stream. N.J.S.A. 12:5-3. The DEP conducted a Preliminary Analysis in conjunction with the permit applications. After this study was conducted, the DEP expressed concern with the project's location, water quality and shellfish bed impact. The project was given a "discouraged" status, N.J.A.C. 7:7E-1.5(c). Because of that classification, Trendor was required to submit supplemental information before the DEP would declare the application complete for filing. Trendor complied, and the application was declared complete for filing on July 24, 1985.
As part of its permit review process, the DEP, through the Division of Coastal Resources (DCR), held a fact-finding public hearing on August 29, 1985, as mandated by N.J.S.A. 13:19-9, at which plaintiffs made presentations. DCR consulted with the Division of Water Resources (DWR), charged with water quality protection.
On April 18, 1986, the DEP issued CAFRA and WDA permits to Trendor. The CAFRA permit contained certain conditions. A report issued with the permits stated that the project's impact on nearby shellfish beds from potential contaminated *210 site storm water runoff had been the focus of DCR review. Contaminants of particular concern were heavy metals from paints, petroleum products from cars and boats, and fertilizers. Permit conditions were imposed to prevent shellfish bed degradation. These conditions required, among other things, a reduction in the number of parking spaces and boat slips, use of pervious parking surface materials to absorb runoff, landscaping restrictions, and the submittal to DCR of a water pollution control plan.
Following issuance of the conditional permits, Trendor requested an adjudicatory hearing pursuant to N.J.A.C. 7.7-5.1(a) to preserve its right to contest six of the permit conditions. The DEP granted the motion. Trendor then negotiated with DCR respecting the scope of a Water Pollution Control Plan required by DWR. During the negotiations, Trendor submitted a series of technical proposals for various water treatment and water detention facilities. Plaintiffs were supplied with all written submissions from Trendor concerning the Water Pollution Control Plan.
Pertinent to this appeal are two applications filed by plaintiffs while the negotiations were ongoing. The first consisted of a letter dated May 7, 1986 and Supplemental Notice of Appeal dated June 10, 1986, in which plaintiffs appealed to the DEP from the issuance of both the CAFRA and WDA permits and requested a stay. In their Supplemental Notice of Appeal, plaintiffs requested an adjudicatory hearing. The DEP treated the request for an adjudicatory hearing as having been made pursuant to N.J.A.C. 7:7-5.1. In denying this request, the DEP found that there was no contested case within the meaning of the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 et seq. and N.J.A.C. 1:1-1 et seq. The DEP concluded that plaintiffs were not aggrieved parties under the APA, and that CAFRA and WDA did not provide a right to an adjudicatory hearing to nonaggrieved third parties. The DEP further concluded that the public hearing and comment period had afforded adequate opportunity to plaintiffs to express their concerns.
*211 In the second motion, plaintiffs sought, by direct application to the Office of Administrative Law (OAL), to intervene in Trendor's pending OAL hearing. The OAL denied this motion, and the DEP denied plaintiffs' interlocutory appeal of the OAL decision.
On November 10, 1987, DCR held a second public hearing respecting Trendor's proposed Water Pollution Control Plan. At this hearing, plaintiffs offered testimony of two expert witnesses: Thomas Cahill, a professional engineer, and Fritts Golden, an environmental consultant. These experts criticized Trendor's proposed plan. Counsel for plaintiffs was also permitted to make comments.
On February 24, 1988, the DCR approved a set of modifications of the conditions attached to the CAFRA permit. On March 9, 1988, the OAL transferred the matter back to the DEP because the modifications of the CAFRA permit conditions ended Trendor's desire to pursue its appeal before the OAL.
Plaintiffs filed a motion with the DEP on March 1, 1988 requesting a hearing before the OAL to challenge the CAFRA permit modifications. This motion was denied on March 19, 1988, in a letter which stated substantially the same reasons as were given in response to plaintiffs' previous hearing request. This appeal followed.

II
Plaintiffs now contend that they were entitled to a plenary hearing before the OAL regarding the Pelican Cove project and that the DEP acted arbitrarily, capriciously and unreasonably in denying the hearing. They argue that theirs is a contested case within the meaning of the APA, N.J.S.A. 52:14B-1 et seq., and N.J.A.C. 1:1-2.1, entitling them to a hearing pursuant to N.J.S.A. 52:14B-9. We find this contention to be unpersuasive.
The APA defines "contested case" as
a proceeding, including any licensing proceeding, in which the legal rights, duties, obligations, privileges, benefits or other legal relations of specific parties *212 are required by constitutional right or by statute to be determined by an agency by decisions, determinations, or orders, addressed to them or disposing of their interests, after opportunity for an agency hearing, .... [N.J.S.A. 52:14B-2(b)]
We read the APA as requiring an adjudicatory hearing only where a party is entitled to such a hearing by statutory or constitutional right. Furthermore, an evidentiary hearing is mandated only when the proposed administrative action is based on disputed adjudicatory facts. Bally Mfg. Corp. v. N.J. Casino Control Comm'n., 85 N.J. 325, 334 (1981); Cunningham v. Dept. of Civil Service, 69 N.J. 13 (1975).
The APA only prescribes the procedure to be followed if the right to a hearing is required by statute or the constitution. It does not in itself establish the right to a hearing. Little Falls Tp. v. Bardin, 173 N.J. Super. 397, 404-405 (App.Div. 1979), certif. den. 82 N.J. 286 (1980). No provision of CAFRA or the WDA statute afforded the plaintiffs in this case any statutory right to a hearing. See Public Interest Research Group v. State, 152 N.J. Super. 191, 205 (App.Div.), certif. den. 75 N.J. 538 (1977).
Furthermore, simply because some of the plaintiffs reside close to the proposed Pelican Cove site and are fearful of resultant injury to their property, does not mean they are entitled to an adjudicatory hearing. See Normandy Beach v. Environ. Protection Dept. Com'r., 193 N.J. Super. 57, 61 (App. Div. 1983), certif. den. 96 N.J. 305 (1984); Public Interest Research Group v. State, supra. Fear of damage to one's recreational interest or generalized property rights shared with other property owners is insufficient to demonstrate a particularized property right or other special interest. See Hills Development Co. v. Bernards Tp., 229 N.J. Super. 318, 335 (App.Div. 1988).
Plaintiffs Constance Pilling and James Jenks also contend that their leaseholds in the shellfish bottoms are particularized property rights which entitle them to an adjudicatory hearing. We disagree.
*213 The DEP has full control and direction of the shellfish industry. N.J.S.A. 50:1-5. Shellfish leaseholds are granted pursuant to N.J.S.A. 50:1-23 to N.J.S.A. 50:1-27. But these statutory provisions do not grant to Pilling and Jenks a particularized property right. Nor do the leases they signed. Their leases were for one year terms subject to renewal. Obviously, it would take longer than one year after construction commences before the project is completed. Plaintiffs have not contended that damage would be caused to the shellfish leaseholders during the construction phase of the project. The present leases expire on December 31, 1989. Hence, any perceived damage to the shellfish beds would occur after the existing leases expire.
Beyond the short term leases of shellfish waters, there is no right granted by N.J.S.A. 50:1-5, et seq. that leaseholders will have a particular water quality. In fact, N.J.S.A. 50:1-30 and N.J.S.A. 50:1-31 specifically permit the leasing of condemned shellfish waters or areas. N.J.A.C. 7:9-4.4 defines shellfish waters as "waters classified as Approved, Seasonally Approved, Special Restricted, Seasonally Special Restricted or Condemned...." Condemned shellfish areas are "waters not meeting the established sanitary standards as recommended by the Interstate Shellfish Sanitation Conference." N.J.A.C. 7:12-1.2.
Plaintiff Jenks contends further that because he earns his living as a shell fisherman, he has a particularized property right to pursue his occupation. The right to pursue a particular job as opposed to the right to gainful employment, is not a fundamental right. The test to be applied to alleged deprivation is the rational basis test. Greenberg v. Kimmelman, 99 N.J. 552, 573-74 (1985). Jenks will not be barred from working as a shell fisherman. The regulations provide for decontamination of shellfish harvested from condemned or restricted waters by various methods: primarily relaying, utilizing approved natural beds, and depuration, using a controlled environment, such *214 as a tank. See N.J.A.C. 7:12-1.2; N.J.A.C. 7:25-15.1; N.J.A.C. 7:17-1 et seq. The fact that Jenks may have to travel 45 miles to the nearest uncontaminated shellfish bed, to either plant or relay his shellfish, does not constitute a deprivation of the right to work as a shell fisherman. At most, it is deprivation of the right to work at a particular job site. The State's interest in waterfront redevelopment within the protective requirements of CAFRA forms a rational basis for this deprivation. N.J.A.C. 7:7E-1.5.
We have considered the remaining contentions raised and find they are clearly without merit.[1]R. 2:11-3(e)(1)(D) and (E). We add only that our thorough study of the record convinces us that the DEP made proper factual determinations pursuant to N.J.S.A. 13:19-10. The final decision of the DEP was not arbitrary, unreasonable or capricious. Campbell v. Dept. of Civil Service, 39 N.J. 556, 562 (1963). The final administrative decision is therefore affirmed.
NOTES
[1] Plaintiffs contend that a New Jersey Pollutant Discharge Elimination System (NJPDES) permit is required by Pelican Cove's storm water treatment system. Condition No. 6 in Trendor's CAFRA permit provides that "[T]his permit does not waive the obtaining of federal or other state or local government consent when necessary. This permit is not valid and no work shall be undertaken until such time as all other required approvals and permits have been obtained." On February 24, 1988, the DCR concluded Trendor "need not apply for a ... NJPDES permit at this time." But on September 9, 1988, DWR took a different position. On that date DWR advised DCR that NJPDES permits were required for the Pelican Cove storm water "discharge to surface water (Barnegat Bay) and to groundwater." Because the two agencies (DCR and DWR) are apparently in disagreement as to whether a NJPDES permit is required and no final decision has been made by the DEP on the issue, we have declined to address the contention raised by plaintiffs.