**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0999-17
                A-1005-17

IN THE MATTER OF THE
NEW JERSEY PINELANDS
COMMISSION'S APPROVAL OF
NEW JERSEY NATURAL GAS'S
APPLICATION (NO. 2014-0045.001)
FOR THE INSTALLATION AND
OPERATION OF THE SOUTHERN
RELIABILITY LINK PROJECT
AND THE DENIAL OF PINELANDS
PRESERVATION ALLIANCE'S
REQUEST FOR AN
ADJUDICATORY HEARING

_____

IN THE MATTER OF THE
NEW JERSEY PINELANDS
COMMISSION'S APPROVAL OF
NEW JERSEY NATURAL GAS'S
APPLICATION (NO. 2014-0045.001)
FOR THE INSTALLATION AND
OPERATION OF THE SOUTHERN
RELIABILITY LINK PROJECT
AND THE DENIAL OF DANIEL
CARUSO, PATRICIA CARUSO AND
JEAN KORVATH'S REQUEST FOR
AN ADJUDICATORY HEARING

_____

Argued January 20, 2021 – Decided April 29, 2021

Before Judges Yannotti, Haas, and Natali.

On appeal from the New Jersey Pinelands Commission, Application No. 2014-0045.001.

Paul Leodori argued the cause for appellants Pinelands Preservation Alliance, Daniel Caruso, Patricia Caruso, and Jean Kovath (Paul Leodori, PC, attorneys; Amy Huber, on the briefs).

Kristina L. Miles, Deputy Attorney General, argued the cause for respondent New Jersey Pinelands Commission (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Patrick S. Woolford, Deputy Attorney General, on the briefs).

Dennis J. Krumholz argued the cause for respondent New Jersey Natural Gas Company (Riker, Danzig, Scherer, Hyland, LLP, attorneys; Dennis J. Krumholz, of counsel and on the briefs; Michael S. Kettler, on the briefs).

PER CURIAM

These two appeals, argued back-to-back and consolidated for purposes of this opinion, arise from a challenge to the decision of the Pinelands Commission (Commission) granting New Jersey Natural Gas Company (NJNG)'s proposal to construct the Southern Reliability Link (SRL), an approximate 12-mile natural gas pipeline traversing through several municipalities and a portion of the Pinelands area. Appellants, Pinelands Preservation Alliance (PPA), an

A-0999-17

environmental interest group, Daniel and Patricia Caruso (Carusos), and Jean Korvath (Korvath) (collectively appellants or third-party objectors), property owners living within one hundred feet of the SRL, challenge the Commission's decision denying their request for an adjudicatory hearing. They contend the Commission's: 1) refusal to permit a contested hearing before the Office of Administrative Law (OAL) was arbitrary and capricious; 2) limited procedural review violated their due process rights; and 3) failure to support its decision with competent evidence in the record warrants reversal.

We disagree with all of these arguments and affirm. The Commission properly denied appellants' requests for adjudicatory hearings as they have neither a statutory nor constitutionally protected property right to such a proceeding. Further, the Commission afforded the appellants and all members of the public with notice and an opportunity to submit oral and written comments before deciding whether to approve NJNG's SRL project and supported its decision with competent evidence in the record.

I.

In 2015, NJNG proposed the SRL, an approximately thirty-mile, thirty-inch intrastate high-pressure natural gas transmission pipeline to service its existing customers in Burlington, Monmouth, and Ocean Counties. Only a 12.1

mile portion of the SRL would cross the Pinelands Area, specifically running through Plumstead, Jackson, and Manchester Townships in Ocean County.

In April 2015, NJNG submitted a pinelands development application seeking the Commission's approval to construct and install the SRL's 12.1-mile portion in the Pinelands Area pursuant to the Pinelands Comprehensive Management Plan (CMP) Rules, N.J.A.C. 7:50-1.1 to -10.30. NJNG also filed two related petitions with the Board of Public Utilities (Board). NJNG later revised the SRL's proposed route and submitted an amended application to the Commission and amended petitions to the Board.

The Commission's staff reviewed NJNG's amended application under the CMP's coordinated permitting process, N.J.A.C. 7:50-4.81 to -4.85. The staff issued a "certificate of filing" in December 2015, finding the SRL project consistent with the CMP's minimum standards. The Executive Director then submitted a letter to the Board dated March 10, 2016, stating that the project remained consistent with the CMP.

We subsequently decided In re Petition of South Jersey Gas Co., (SJG) 447 N.J. Super. 459, 465 (App. Div. 2016), in which various parties challenged the Executive Director's approval of a similar pipeline proposed by South Jersey Gas that would run through the Pinelands. The court held, in part, that only the

Commission, not its Executive Director or staff, had "the authority to render final decisions on CMP compliance . . . in the coordinated permitting process." Id. at 477. Consequently, we remanded review of South Jersey Gas's application to the Commission with specific instructions on conducting further proceedings. Id. at 478-79, 484.

Following SJG, the Commission sought remands in related pending appeals addressing the SRL so it could review NJNG's amended application under the guidelines set forth by the court. We granted the motions, dismissed the SRL appeals, and instructed:

> On remand, the Commission shall determine whether to render its decision based on the record before the Board of Public Utilities or to allow the parties to present additional evidence. The Commission shall also determine whether to refer the matter to the Office of Administrative Law for an evidentiary hearing before an Administrative Law Judge [(ALJ)].

On June 9, 2017, the Commission adopted Resolution No. PC4-17-10, outlining its new process for reviewing whether NJNG's SRL project was consistent with the CMP's minimum standards. This resolution announced in part:

> 2. The Commission has considered whether to refer this matter to the Office of Administrative Law [(OAL)] for an evidentiary hearing and has decided not to do so, because:

5

a. An additional evidentiary hearing is not necessary at this time given the limited regulatory issues involved in this application and the extensive record already developed both as part of the Commission's review of the application and hearings conducted before the [Board].

3. The Commission staff shall provide notice of the public's opportunity to provide both oral and written comments regarding the Commission staff's consistency determination . . . .

4. The former Appellants (Sierra Club and the Pinelands Preservation Alliance) may submit any additional information that they wish as part of the public comment process.

5. The Commission staff shall, following the close of the public comment period, review the record and any public comment provided and shall prepare a recommendation as to whether its prior consistency determination should be affirmed. Such recommendation report shall be posted on the Commission's website . . . .

6. Any interested party who possesses a particularized property interest sufficient to require a hearing on constitutional or statutory grounds in accordance with N.J.S.A. 52:14B-3.2 & 3.3, may within 15 days of the posting of the Commission staff's recommendation report, submit a hearing request to the Commission.

Upon passage of PC4-17-10, the Commission posted notice on its website

that the public could submit oral comments on NJNG's pinelands application at

6

a special meeting on July 26, 2017, and written comments until the close of business on August 2, 2017. The Commission held the special meeting as scheduled; forty-five participants spoke, including appellants, and the Commission received over 1300 written comments.

After considering those submissions and NJNG's amended application, the Commission staff determined that the portion of the SRL through the Pinelands Area was consistent with the CMP, and the Executive Director submitted a report to the Commission on August 29, 2017, recommending approval with conditions. At the Commission's meeting, the Executive Director reviewed the public's comments, the relevant CMP, and permitted use standards governing each affected Pinelands Management Area.

On September 14, 2017, as memorialized in Resolution No. PC4-17-27, the Commission voted and approved NJNG's pinelands application with conditions for the SRL's route through the Pinelands Area. The Commission declared that it had reviewed the public's comments, the record, and the Executive Director's recommendation report, and had found "ample evidence" demonstrating that the proposed installation with the recommended conditions conformed to the minimum CMP standards.

On September 10, and 12, 2017, the Carusos and Kovath submitted to the Commission requests for an adjudicatory hearing before the OAL "in response to the Executive Director's report" recommending approval of NJNG's pinelands application.

The Carusos wrote as "interest[ed] parties," stating that they owned property in Wrightstown, which was "directly along the 'proposed pipeline route.'" They first claimed the SRL violated the CMP and was contrary to the Executive Director's findings because: 1) it was not genuinely associated with the function of the Joint Base McGuire-Dix-Lakehurst (Joint Base or JB-MDL), which was located within the Military and Federal Installation Area, one of the Pinelands Management Areas, N.J.A.C. 7:50-5.12; 2) was not routed through the less sensitive Pinelands Protection Area; and 3) it failed to meet the CMP's wetlands protection standards.

They further asserted that the Executive Director's approval recommendation "would inflict direct harm to [their] property and [their] family." They claimed that there was "approximately 15 feet" between their property and the pipeline, and they were concerned that NJNG would expand its construction activities onto their property.

A-0999-17

The Carusos, unlike other property owners adjacent to the pipeline, had not signed a construction easement agreement with NJNG providing for a "temporary workspace" of twenty-five feet to expand construction activities on either side of the right-of-way. They noted that NJNG's application stated that "construction activities for the project will include temporary disturbances to existing pavement and maintained/cleared, compacted roadway edge."

The Carusos also were concerned that NJNG's horizonal drilling construction method would have a negative impact upon the stream running in front of their house and destroy their drinking water, and that an explosion could occur after the pipeline became operational. They asserted that "[t]he rate of pipeline accidents as recorded by the Pipeline and Hazardous Materials Safety Administration has increased over roughly the past two decades," and that pipeline experts found that "a minimum safety distance for a pipeline of this size and pressure is 800 meters."

Kovath also wrote as "an interested person" on September 12, stating that she owned property in Wrightstown, and that her property was "15 feet away from the pipeline's slated path." She raised similar concerns about the project's lack of compliance with the CMP Rules, and insufficient construction right-of-ways, and staging areas.

A-0999-17

In addition, claiming that the Commission's approval would "directly impact" her property and put her family "at substantial risk," Kovath asserted that "[t]he construction disturbance could kill" the "approximately 300 feet of mature fir trees along the front of [her] property that were planted at great expense to provide [her] family with protection from the strong easterly winds and road noise." She further claimed that her family's drinking water could be impacted by NJNG's construction because her well was located less than fifty feet from the SRL's route. She noted that construction of another pipeline in Pennsylvania, which also involved horizontal directional drilling, had "forced at least 15 families to stop using their well water."

By separate letters dated September 13, 2017, Stacey Roth, the Commission's Chief of Legal and Legislative Affairs, denied appellants' adjudicatory hearing requests. In both letters, citing PC4-17-10, the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -15, and In re Amico/Tunnel Carwash, 371 N.J. Super. 199 (App. Div. 2004), Roth told appellants that the Commission could only grant requests for an adjudicatory hearing if the requestor could: 1) identify a constitutional or statutory ground for the hearing; or 2) establish that the requestor has a particularized property

interest sufficient to require the hearing. She concluded that appellants had not demonstrated either requirement.

Roth explained that any adjudicatory hearing rights granted to interested persons by the CMP Rules, such as in N.J.A.C. 7:50-4.55, had been "curtailed" by the Legislature in 1993 when it amended the APA in N.J.S.A. 52:14B-3.3 to prohibit State agencies from promulgating or applying regulations allowing third-party appeals of permit decisions unless authorized by a federal or state statute. She noted that the APA provides that only three parties now are eligible for an OAL hearing: 1) applicants for an agency license, permit, certificate, approval, registration or other form of permission required by law; 2) the State agency; and 3) a person who has proven a particularized property interest sufficient to require a hearing on constitutional or statutory grounds. "An interested person who is not one of the above is statutorily defined as a third-party. N.J.S.A. 52:14B-3.2." Roth also explained that PC4-10-17, where the Commission set forth the process it would follow to implement the Appellate Division's remand orders and review NJNG's application, only authorized a hearing request by an interested party who possessed a particularized property interest in accordance with the APA.

Roth further noted that the Pinelands Protection Act (Pinelands Act), N.J.S.A. 13:18A-1 to -29, does not grant a trial-type hearing to any third-party objector of a development. Rather, the only hearing rights expressly conferred by the Pinelands Act were found in N.J.S.A.13:18A-20, which affords a right of appellate review of Commission decisions involving: 1) waivers of strict compliance and 2) municipal and county development approvals. Thus, Roth stated that notwithstanding the N.J.A.C. 7:50-4.55's language, the Commission could only grant appellants' requests if they had established a particularized property interest sufficient to require a hearing on constitutional or statutory grounds.

As for her conclusion that appellants lacked any particularized property interest, Roth found that appellants had "not demonstrated that the pipeline will contaminate [their] drinking water supply, that there will be an accident that impacts [their] property, or that there will be permanent damage on [their] property as a result of the proposed development." Citing In re Riverview Development, LLC, 411 N.J. Super. 409, 428 (App. Div. 2010), she explained that "[t]he more general and attenuated that property interest is, the less likely that it will be sufficient to trigger a hearing." Further, relying on Spalt v. New Jersey Department of Environmental Protection, 237 N.J. Super. 206, 212 (App.

12

Div. 1989), Roth stated that "'[f]ear of damage to one's recreational interest or generalized property rights shared with other property owners is insufficient to demonstrate a particularized property right' giving rise to an adjudicatory hearing."

Most significantly, Roth pointed out that only a "12.1[-]mile portion of the overall SRL project [was] proposed to be constructed within the Pinelands Area and, thus, is subject to the Commission's regulatory authority." As the Carusos' and Kovath's properties were "located on Province Line Road, Upper Freehold Township, Monmouth County, and not within the Pinelands Area as delineated by the Pinelands Protection Act" in N.J.S.A. 13:18A-11(a) (setting the boundaries of the pinelands), she concluded that their properties were outside of the Commission's jurisdiction. Roth stated:

> Given this, any alleged impact to your property would not be within the legal purview of the Pinelands Commission and does not raise a particularized property right giving rise to the right to an adjudicatory hearing regarding the 12.1 mile portion of the proposed natural gas pipeline, which is the subject of the application pending before the Commission.
>
> Even if your property was located adjacent to the 12.1 mile portion of the proposed natural gas pipeline to be constructed within the Pinelands Area, the fact that your property is located close to the proposed development and you are fearful of resultant injury to your property is insufficient to establish a right to an

13

adjudicatory hearing before the Office of Administrative Law.

Finally, Roth rejected the Carusos' and Kovath's claim that general environmental concerns and the SRL's conformance with the CMP met the legal requirements for them to be afforded an adjudicatory hearing before the OAL. Instead, she noted that "interested parties aggrieved by the final decision of the Commission may have the right to file an appeal with the Appellate Division within [forty-five] days from that final agency action." On October 27, 2017, the Carusos and Kovath jointly filed a notice of appeal only from Roth's September 13 denials of their adjudicatory hearing requests.[1]

On September 12, 2017, PPA submitted to the Commission a similar request for "an adjudicatory hearing, and/or the right to participate as a party in such a hearing granted at the request of another interested party." PPA claimed that it was qualified "as an interested party with standing to initiate and participate as a party in an adjudicatory hearing because it represents the interests of those individuals and families whose property and rights will be

---

[1] In their merits brief, the Carusos and Kovath appear to challenge the legal and factual bases for Resolutions PC4-17-10, PC4-17-10 and PC4-17-49. However, these Resolutions are not before us as they were not designated in appellants' notice of appeal. See Campagna ex rel. Greco v. Am. Cyanamid Co., 337 N.J. Super. 530, 550 (App. Div. 2001); Pressler & Verniero, Current N.J. Court Rules, cmt. 5.1 on R. 2:5-1 (2021).

directly affected by the pipeline if it is built." PPA explained that its "representative capacity" was "particularly important" since the Commission had improperly decided not to provide notice of the Executive Director's approval recommendation to the entire public as purportedly required by the CMP Rules in N.J.A.C. 7:50-4.3, -4.37 and -4.41, or include the "standard language regarding appeals and hearings."

PPA further asserted, without legal citation, that because Commission approval was required for "construction of the pipeline along the proposed route outside the Pinelands, any party whose interest arises from the impact of the pipeline outside the Pinelands is harmed by a Commission approval and has standing to obtain an adjudicatory hearing on the Executive Director's report."

PPA also challenged the Commission's review process for NJNG's application as set forth in PC4-17-10. PPA argued that this process, which required no evidentiary hearing, would lead to "irrational decision making" by the Commission and was "fundamentally unfair to those affected by the proposed pipeline development." PPA claimed that an evidentiary hearing would show that the Executive Director's recommendation relied "on misstated, misunderstood and irrelevant information that was not in the record."

15

PPA identified "three examples" of "fatal defects" in the Executive Director's report that needed to be addressed in an evidentiary hearing. First, PPA pointed to the report's reliance on an April 2016 explosion to an interstate main transmission supply line in Pennsylvania to prove New Jersey's need for the SRL. PPA claimed the explosion showed that NJNG could simply increase its intake of natural gas from Transco, one of its other interstate suppliers to its existing network. For support, PPA attached a 2017 report from its natural gas experts, Skipping Stone, alleging that even if the explosion had taken place in winter, when gas demand is highest, NJNG already had access to sufficient gas supplies from Texas Eastern Transmission Corporation (TETCO), Transcontinental Pipeline Company (Transco), and its own liquified natural gas reserves.[2]

Second, the PPA pointed to the report's reliance on a 2017 "desk top exercise" conducted by the Board. PPA claimed that this exercise was not part of NJNG's pinelands application or made available for public review, so it was "impossible for the public or the Commissioners to know whether the exercise was rigorous and reliable."

---

[2] Both TETCO and Transco are energy companies that own and operate natural gas pipelines in New Jersey.

A-0999-17

Third, PPA pointed to the report's depiction of a scenario in which both a separate gas supply line and NJNG's system failed as justification for the SRL. PPA claimed that neither NJNG nor the Board had presented this scenario, so it was "irrational and inappropriate for the Commission to rely on such a hypothesis."

By letter dated September 13, 2017, Roth denied PPA's adjudicatory hearing request. Similar to her denial letters sent to the Carusos and Korvath, Roth informed PPA that the Commission could only grant requests for an adjudicatory hearing if the requestor could: 1) identify a constitutional or statutory ground for the hearing; or 2) establish that the requestor has a particularized property interest sufficient to require the hearing. Roth found that the Pinelands Act did not afford PPA the right to an adjudicatory hearing, and that PPA had not demonstrated a particularized property interest to require such a hearing.

Moreover, citing Spalt, 237 N.J. Super. at 212, and Public Interest Research Group, Inc. v. State Department of Environmental Protection, 152 N.J. Super. 191, 205 (App. Div. 1977), Roth stated that PPA's asserted "[r]epresentation of others, based on conjecture as to those individuals' standing to seek an adjudicatory hearing[, did] not constitute a particularized property

interest." She also explained again that the Commission's jurisdiction was "confined to the State designated Pinelands Area. Potential impacts associated with development located outside of the Pinelands Area thus is not within the legal purview of the Pinelands Commission and does not raise a particularized property right giving rise to the right to an adjudicatory hearing."

Roth next rejected PPA's claims that the Commission did not give proper notice of the Executive Director's recommendation or report in accordance with N.J.A.C. 7:50-4.3, -4.37 and -4.47. She stated that PPA's claims were "inaccurate" and did not "transform PPA's representational role into a particularized property interest that entitle[d] the PPA to an adjudicatory hearing." Roth referenced a September 12, 2017 letter to PPA's counsel which explained why those CMP provisions were inapplicable to NJNG's application.

She further explained that the Commission had provided "the requisite notice of the Executive Director's Recommendation report as required by Resolution PC4-17-10." In fact, Roth noted that the Commission, during its passage of PC4-17-10 in June 2017, had considered whether it would refer this matter to the OAL for an evidentiary hearing and had unanimously decided not to do so. She stated that the Commission "made this decision because the regulatory issues involved in the application and the extensive record already

18

developed both as part of the Commission's review of the application and the hearings conducted by the [Board] negated the need for a hearing."

Finally, Roth determined that the 2017 Skipping Stone report would not be included as part of the decisional record provided to the Commissioners since it was submitted attached to PPA's hearing request after the public comment period on NJNG's application had closed.

II.

Appellants first contend the Commission erred by denying their requests for an OAL adjudicatory hearing to contest the Executive Director's report recommending approval of the SRL project. We disagree. As the Commission properly found, appellants failed to establish either a statutory right or constitutionally protected property interest entitling them to such a hearing. Furthermore, allowing the Commission to decide whether it would refer the matter to the OAL for an evidentiary hearing was consistent with our remand instructions in SJG.

Our review of an administrative agency's final determination is limited. In re Adoption of Amends. to Ne., Upper Raritan, Sussex Cnty. & Upper Del. Water Quality Mgmt. Plans, 435 N.J. Super. 571, 582 (App. Div. 2014). We "afford[ ] a 'strong presumption of reasonableness' to an administrative agency's

exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting City of Newark v. Nat. Res. Council, Dep't of Env't Prot., 82 N.J. 530, 539 (1980)). We reverse only if we "conclude that the decision of the administrative agency is arbitrary, capricious or unreasonable, or is not supported by substantial credible evidence in the record as a whole." J.D. v. N.J. Div. of Developmental Disabilities, 329 N.J. Super. 516, 521 (App. Div. 2000).

Our review is therefore limited to three questions: 1) whether the decision is consistent with the agency's governing law and policy; 2) whether the decision is supported by substantial evidence in the record; and 3) whether, in applying the law to the facts, the agency reached a decision that could be viewed as reasonable. In re Adoption of Amends., 435 N.J. Super. at 583 (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)). Implicit in the scope of our review is a fourth question: whether the agency's decision offends the State or Federal Constitution. George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994). The burden of proof is on the party challenging the agency's action. Lavezzi, 219 N.J. at 171.

However, we are not "bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Ardan v. Bd. of Rev., 231 N.J. 589,

604 (2018) (quoting U.S. Bank, N.A. v. Hough, 210 N.J. 187, 200 (2012)). We consider those issues de novo. L.A. v. Bd. of Educ. of Trenton, 221 N.J. 192, 204 (2015). But, "[w]hen resolution of a legal question turns on factual issues within the special province of an administrative agency, those mixed questions of law and fact are to be resolved based on the agency's fact finding." Campbell v. N.J. Racing Comm'n, 169 N.J. 579, 588 (2001).

Applying these well-established principles, we turn to the Board's decision to deny appellants' an adjudicatory hearing and discern no basis for disturbing the Commission's decision. We therefore reject appellants' arguments on this point substantially for the reasons set forth by Roth in her comprehensive written opinions and add the following comments, addressing appellants' specific claims seriatim.

A.     State or Federal statutory right to an adjudicatory hearing.

"A third-party objector's right to a formal administrative hearing is delineated and circumscribed by the [APA]." In re Authorization for Freshwater Wetlands Statewide Gen. Permit 6, Special Activity Transition Area Waiver for Stormwater Mgmt., Water Quality Certification, 433 N.J. Super. 385, 406 (App. Div. 2013). "Although 'the APA does not foreclose such third parties from seeking judicial review of the merits of a permit once it is issued by an agency,'"

A-0999-17

id. at 406-07 (quoting Riverview Dev., 411 N.J. Super. at 425), it gives the non-applicant objector no automatic right to an adjudicatory hearing to contest the issuance of a permit unless he or she can establish a separate statutory or constitutional right to that hearing. In re NJPDES Permit No. NJ0025241, 185 N.J. 474, 481 (2006); In re Freshwater Wetlands Statewide Gen. Permits, 185 N.J. 452, 463 (2006); Spalt, 237 N.J. Super. at 212. See In re License of Fanelli, 174 N.J. 165, 172 (2002) (stating "the right to an administrative hearing generally must be found outside the APA in another statute or constitutional provision") (alteration in original) (quoting Christ Hosp. v. Dep't of Health & Senior Servs., 330 N.J. Super. 55, 61 (App. Div. 2000)).

In this regard, N.J.S.A. 52:14B-3.1 to -3.3, the APA expressly prohibits any state agency from promulgating rules or regulations granting an OAL hearing to any person other than a permit applicant unless "specifically authorized to do so by federal law or State statute," N.J.S.A. 52:14B-3.1(d), or unless that third party "has [a] particularized interest sufficient to require a hearing on constitutional or statutory grounds." N.J.S.A. 52:14B-3.2(c) and -3.3. Accord Amico/Tunnel Carwash, 371 N.J. Super. at 204.

N.J.S.A. 52:14B-3.1 specifically provides:

The Legislature finds and declares that:

22

a.     Under the provisions of the "Administrative Procedure Act," P.L.1968, c. 410 (C. 52:14B-1 et seq.) all interested persons are afforded reasonable opportunity to submit data, views or arguments, orally or in writing, during any proceedings involving a permit decision;

b.  Persons who have particularized property interests or who are directly affected by a permitting decision have constitutional and statutory rights and remedies;

c.  To allow State agencies without specific statutory authorization to promulgate rules and regulations which afford third parties, who have no particularized property interests or who are not directly affected by a permitting decision, to appeal that decision would give rise to a chaotic unpredictability and instability that would be most disconcerting to New Jersey's business climate and would cripple economic development in our State; and

d.  It is, therefore, altogether fitting and proper, and within the public interest, to prohibit State agencies from promulgating rules and regulations which would allow third party appeals of permit decisions unless specifically authorized to do so by federal law or State statute.

[N.J.S.A. 52:14B-3.1.]

N.J.S.A. 52:14B-3.2 defines "[p]ermit decision" as "a decision by a State agency to grant, deny, modify, suspend or revoke any agency license, permit, certificate, approval, chapter, registration or other form of permission required by law."  That statute also defines "[t]hird party" as "any person other than:  [(a)]

An applicant for any agency license, permit, certificate, approval, chapter, registration or other form of permission required by law; [(b)] A State agency; or [(c)] A person who has particularized property interest sufficient to require a hearing on constitutional or statutory grounds." And N.J.S.A. 52:14B-3.3 states:

> a. Except as otherwise required by federal law or by a statute that specifically allows a third party to appeal a permit decision, a State agency shall not promulgate any rule or regulation that would allow a third party to appeal a permit decision.
>
> b. Nothing herein shall be construed as abrogating or otherwise limiting any person's constitutional and statutory rights to appeal a permit decision.

Here, appellants have no "particularized property interest sufficient to require a hearing on . . . statutory grounds" to contest the Executive Director's report before the OAL. N.J.S.A. 52:14B-3.2(c). While both the Pinelands Act and the National Parks and Recreation Act of 1978, 16 U.S.C. § 471i (creating New Jersey's Pinelands National Reserve), contemplate programs "to provide for maximum feasible . . . public participation in the management of the [Pinelands]," N.J.S.A. 13:18A-8(h) and 16 U.S.C. § 471i(f)(7), neither of those statutes expressly grants adjudicatory hearings to third-party objectors, like appellants. Instead, they discuss the requirement of holding "public hearings"

when developing a management plan, i.e., the CMP Rules. N.J.S.A. 13:18A-8; 16 U.S.C. § 471i(e)(5).

And, although the Pinelands Act grants the Commission power "[t]o hear testimony, taken under oath at public or private hearings, on any material matter," N.J.S.A. 13:18A-6(h), it does not expressly provide non-applicants or third-party objectors the right to an administrative adjudicatory hearing to challenge the Executive Director's recommendation report or any Commission approval. Further, N.J.S.A. 13:18A-15, on which appellants rely, does not provide the right to an evidentiary hearing. N.J.S.A. 13:18A-15 authorizes the Commission, after adoption of the CMP, "to commence a review . . . of any application for development in the pinelands area," and after notice "to the person who submitted such application," the Commission "shall, after public hearing thereon, approve, reject, or approve with conditions any such application." (emphasis added).

Appellants, nevertheless, rely on other statutory authority and regulations to establish their right to such a hearing. They initially rely on the private OAL hearing rights afforded to an "interested person" in the CMP Rules. We are not persuaded by this argument.

"Interested person" is defined in N.J.A.C. 7:50-2.11 as:

> [A]ny persons whose right to use, acquire, or enjoy property is or may be affected by any action taken under this [CMP] Plan, or whose right to use, acquire, or enjoy property under this Plan or under any other law of this State or of the United States has been denied, violated, or infringed upon by an action or failure to act under this Plan.

Appellants contend that N.J.S.A. 52:14B-3.1 to -3.3 does not apply to them because, as interested persons, they requested a hearing to challenge the Executive Director's recommendation, and not a permit or Commission approval. Their reliance on the CMP Rules is misplaced as N.J.A.C. 7:50-4.92 states that "[a]ll appeals of determinations of the Executive Director shall be made to the [OAL] pursuant to N.J.A.C. 7:50-4.91," and N.J.A.C. 7:50-4.91 limits hearings to "[a]ny person who has a right to request a hearing conducted by the Office of Administrative Law." (emphasis added).

Thus, in accordance with N.J.S.A. 52:14B-3.1 to -3.3, only a person or entity who has either submitted a development application to the Commission or has a particularized property interest sufficient to require a hearing on constitutional or statutory grounds has a right to a hearing before the OAL. Amico/Tunnel Carwash, 371 N.J. Super. at 210 (stating "the evident purpose of the 1993 amendment was to withdraw the power of a state administrative agency

26

to provide for an OAL hearing by rule or regulation even though such a hearing is not required by the APA").

Further, contrary to appellants' claims, In re Madin/Lordland Development International for Pinelands Approval, 201 N.J. Super. 105 (1985), provides no support for their arguments. That case concerned whether a Pinelands municipality, whose Master Plan and local land use ordinances were not yet certified by the Commission, could challenge the Commission's development approvals, and receive an evidentiary hearing as an interested party.

Appellants reliance on the Environmental Rights Act (ERA), N.J.S.A. 2A:35A-1 to -14, is equally without merit. Rather than granting private citizens the right to an administrative hearing, as defendants assert, "'[t]he ERA creates a private cause of action for declaratory and injunctive relief' . . . 'to enforce an environmental protection statute as an alternative to inaction by the government which retains primary prosecutorial responsibility.'" N.J. Dep't of Env't Prot. v. Exxon Mobil Corp., 453 N.J. Super. 272, 293 (App. Div. 2018) (quoting Patterson v. Vernon Twp. Council, 386 N.J. Super. 329, 330-31 (App. Div. 2006), and then Superior Air Prods. Co. v. NL Indus., Inc., 216 N.J. Super. 46, 58 (App. Div. 1987)); see also Twp. of Howell v. Waste Disposal, Inc., 207 N.J.

Super. 80, 98 (App. Div. 1986) (stating the ERA grants a private person standing to enforce environmental protection laws an alternative to inaction or inadequate action by the enforcing agencies). We have reviewed the administrative record and are satisfied that the ERA provides no support for appellants' claim to an adjudicatory hearing. Indeed, there was no inaction, or inadequate inaction by the Commission.

B. Particularized property interest sufficient to require a hearing on constitutional grounds.

Appellants also have no "particularized property interest sufficient to require a hearing on constitutional . . . grounds" to contest the Executive Director's report before the OAL. N.J.S.A. 52:14B-3.2(c). First, even assuming the Carusos' and Korvath's properties are all located within fifteen feet from the proposed pipeline, their properties and the nearby development are not within the Pinelands Area. Thus, any alleged impact to their properties would not be within the jurisdiction of the Commission and could not raise a particularized property right entitling them to an adjudicatory hearing regarding the Executive Director's report on the portion of the SRL in the Pinelands.

Second, as Roth correctly explained, the generalized concerns of PPA and appellants to the proposed development do not establish a particularized property right to require a hearing on constitutional grounds. In Spalt, we stated:

28                                                          A-0999-17

> [S]imply because some of the plaintiffs reside close to the proposed . . . [development] site and are fearful of resultant injury to their property, does not mean that they are entitled to an adjudicatory hearing. Fear of damage to one's . . . generalized property rights shared with other property owners is insufficient to demonstrate a particularized property right or other special interest.
>
> [237 N.J. Super. at 212 (citations omitted).]

See also In re Freshwater Wetlands Statewide Gen. Permits, 185 N.J. at 473 (stating "speculative" threats of property damage from development do not establish particularized property interest entitling third parties to a trial-type hearing).

Third, although environmental interest groups, such as PPA, have standing to appeal an agency's settlements and final decisions based upon their broad representation of citizen interests throughout this state, see Exxon Mobil Corp., 453 N.J. Super. at 301, 303, that status alone does not entitle them to an adversarial administrative hearing as a third-party objector. In our view, simply asserting that an environmental group is entitled to an administrative hearing because it represents municipalities and families whose property and rights will be affected by the pipeline is too speculative of an interest to warrant such a proceeding. Freshwater Wetlands Statewide Gen. Permits, 185 N.J. at 473;

Spalt, 237 N.J. Super. at 212. The Commission, therefore, did not err when it concluded that PPA and appellants failed to establish any constitutional grounds to contest the Executive Director's report before the OAL.

III.

In their next point, appellants argue that the Commission's procedural review violated state and federal due process guarantees. They assert that an opportunity for public comment on any development project is not equivalent to participation in an evidentiary hearing before the OAL. Again, we disagree.

At a minimum, whether analyzed under the Federal or State Constitution, due process requires adequate notice and an opportunity to be heard. First Resol. Inv. Corp. v. Seker, 171 N.J. 502, 513-14 (2002). However, not every justiciable controversy requires a trial-type hearing to satisfy the demands of due process. Freshwater Wetlands Statewide Gen. Permits, 185 N.J. at 467. "[D]ue process is a flexible and fact-sensitive concept." Ibid. "[W]hether a third-party objector's due process rights may be satisfied by an agency's review process depends in significant part on the objector's ability to participate in the process." In re Thomas Orban/Square Props., LLC, 461 N.J. Super. 57, 79 (App. Div. 2019).

Here, PPA and appellants participated in the public hearings and submitted comments to the Commission objecting to the proposed development. Those comments, however, were appropriately addressed in the Executive Director's report. "In the land-use permitting context, . . . a third-party objector's due process rights may be satisfied by an agency's review process, even absent trial-type procedures." In re Freshwater Wetlands Statewide Gen. Permits, 185 N.J. at 471. Under N.J.S.A. 52:14B-3.1(a), "all interested persons are afforded reasonable opportunity to submit data, views or arguments, orally or in writing, during any proceedings involving a permit decision." We are satisfied from our review of the record, that the Commission conscientiously considered appellant's arguments and its procedural review did not violate appellants' state and federal due process guarantees.

## IV.

Appellants also contend that the record contained insufficient evidence to support the Commission's denials of their requests for an adjudicatory hearing. They argue that the Commission's failure to grant them an adjudicatory hearing to challenge the Executive Director's report restricted the facts considered by the Commission and rendered the evidence insufficient to support its approval of NJNG's SRL project. In essence, appellants are challenging PC4-17-10 and

31

the Commission's approval of the SRL pipeline. These claims are procedurally deficient and substantively without merit.

As previously noted, appellants only listed the Commission's denial of the adjudicatory hearing requests in their notices of appeal, and it is only the judgments or orders or parts thereof designated in that notice that are subject to review during the appeal process here. Campagna, 337 N.J. Super. at 550. Substantively, we reject appellants' arguments for the reasons stated in our opinion related to Sierra Club's (A-925-17) and PPA's (A-1004-17) appeal from the final decision of the Commission to approve NJNG's application for the SRL pipeline and their respective appeals (A-3666-15 and A-3752-15) to the Board's March 18, 2016 decision.

V.

Finally, PPA argues that the Commission's meeting minutes of December 12, 2017, and PC4-17-49, confirm that the environmental interest group is entitled to an adjudicatory hearing. This argument lacks sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(1)(E).

We discern nothing in PC4-17-49 stating or confirming that PPA, or any third-party objector, has the right to an adjudicatory hearing to challenge the Executive Director's report or the Commission's review of NJNG's pinelands

application. Likewise, the minutes from the Commission's December 12, 2017 meeting do not support PPA's claim that it, or any third-party objector, is entitled to an adjudicatory hearing. Rather, during that meeting, the Commission and the Executive Director discussed proposed amendments to the CMP Rules, including granting third-party adjudicatory hearings in response to the APA's 1993 amendments, but declined to adopt those changes. See 50 N.J.R. 969(a), 975 (Mar. 5, 2018) (Commission decided not to change third-party hearing requirements until "further analysis of a potential Federal issue" was conducted).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0999-17